# United States Court of Appeals
## For the First Circuit

No. 02-2362

UNITED STATES,

Appellee,

v.

MIGUEL ROSA-ORTIZ,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Dominguez, U.S. District Judge]

Before

Lynch, Circuit Judge,
Siler, Circuit Judge,[*]
and Lipez, Circuit Judge.

Rafael F. Castro Lang for appellant.

Nelson Perez-Sosa, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, and Sonia I. Torres-Pabon, Assistant United States Attorney, were on brief, for appellee.

October 28, 2003

---

[*] Of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

**LYNCH**, **Circuit Judge**.  Miguel Rosa-Ortiz pleaded guilty in federal court to conspiracy to violate the Federal Escape Act, 18 U.S.C. § 751(a), which criminalizes escape and attempted escape by persons who are in federal custody under specified conditions -- including, as the statute pertains to this case, persons in custody "by virtue of an arrest on a charge of felony, or conviction of any offense."  But no court of appeals may uphold a plea of guilty to conduct that is not within the crime charged.  On appeal, Rosa-Ortiz says that § 751(a) does not prohibit the conduct alleged in the indictment.  We agree.

The conspiracy charge was based on evidence that Rosa-Ortiz helped his co-defendant, Maximiliano Amparo-Concepción, attempt to escape from federal prison in Puerto Rico.  Yet not all escapes from federal custody violate § 751(a).  We conclude that Amparo-Concepción was not in federal custody "by virtue of an arrest on a charge of felony, or conviction of any offense" (whether state or federal), but instead solely by virtue of his detention on a federal material witness warrant.  Cf. 18 U.S.C. § 3144.  By its own terms, the Federal Escape Act does not proscribe escapes under such circumstances,[1] which means that Rosa-

---

[1] For this reason, we also vacate today Amparo-Concepción's conspiracy conviction following his guilty plea in the companion case to this appeal, United States v. Amparo-Concepción, No. 02-1935.

Ortiz cannot be guilty of conspiring to violate that Act.[2] Accordingly, we vacate the judgment of conviction and remand with instructions to dismiss the indictment.

## I.

On February 7, 2001, a federal grand jury returned an indictment against Rosa-Ortiz and four co-conspirators, including Amparo-Concepción, for conspiracy to violate § 751(a).[3] According to the government's summary of the facts, which was attached to the plea agreement and acknowledged by Rosa-Ortiz in writing, the defendants plotted to free Amparo-Concepción from the federal Metropolitan Detention Center (MDC) in Puerto Rico. The escape plan involved smuggling a bar-cutting tool into the MDC, meeting Amparo-Concepción outside the prison with a getaway car and a change of clothes, and then fleeing to the Dominican Republic. Rosa-Ortiz's role was to obtain the getaway car, recruit others to help, handle funds sent from the Dominican Republic to finance the escape, and coordinate an advance trip to the perimeter of the MDC so that Amparo-Concepción could identify the chosen getaway car. Rosa-Ortiz did in fact act on most of these plans, including

---

[2] This does not mean that Rosa-Ortiz's conduct did not violate some other federal statute. We hold only that the indictment did not validly allege a conspiracy to violate § 751(a).

[3] The indictment also charged Rosa-Ortiz and three co-defendants with aiding and abetting escape under 18 U.S.C. §§ 752(a) and 2, but that count was later dismissed against Rosa-Ortiz pursuant to his plea agreement.

driving the getaway car to the perimeter of the MDC on February 3, 2001. The FBI foiled the plot.

At the time of the escape attempt, Amparo-Concepción was being held at the MDC pursuant to a material witness warrant issued on December 7, 2000 by the federal district court in Puerto Rico. Cf. § 3144 (authorizing, in limited circumstances, the detention of a witness whose testimony is material to a criminal proceeding). Until that time, Amparo-Concepción had been serving a sentence in a Puerto Rico jail for bank fraud, a felony under Puerto Rico law. While in the custody of the Commonwealth, Amparo-Concepción voluntarily contacted federal authorities with information concerning a scheme among his fellow inmates to use fraudulent immigration documents and faked Supreme Court orders to obtain premature release. Federal investigators became interested in this information and obtained the material witness warrant for Amparo-Concepción's transfer to federal custody.[4] It was on that basis alone that Amparo-Concepción was moved from the Commonwealth jail to the MDC; the government does not contend that any other ground existed for Amparo-Concepción's detention by federal authorities.

On April 17, 2002, Rosa-Ortiz pleaded guilty to the charged conspiracy to violate § 751(a). The district court

---

[4] The record does not reveal why federal authorities preferred to have Amparo-Concepción in federal custody, rather than allow him to remain incarcerated in the Puerto Rico system until his testimony became necessary.

-4-

sentenced him to fifteen months in prison, plus a supervised release term of three years and a special monetary assessment of $100. On appeal, Rosa-Ortiz contends that § 751(a) does not prohibit escape or attempted escape from federal material witness detention. If Amparo-Concepción's escape attempt did not violate § 751(a), then Rosa-Ortiz did not conspire to "commit [that] offense against the United States," 18 U.S.C. § 371, and his conviction cannot stand.[5]

## II.

### A. Waiver

The merits of Rosa-Ortiz's appeal are properly before us. In its brief, the United States contended that Rosa-Ortiz waived his right to challenge the indictment when he entered an unconditional plea of guilty. See United States v. Lujan, 324 F.3d 27, 30 (1st Cir. 2003) (a guilty plea waives all nonjurisdictional challenges to a criminal conviction). At oral argument, however, the government correctly acknowledged that Rosa-Ortiz's guilty plea does not preclude him from arguing on appeal that the statute of conviction does not actually proscribe the conduct charged in the indictment. As this court has explained, "a federal court has jurisdiction to try criminal cases only when the information or

---

[5] Rosa-Ortiz also challenges the district court's interpretation of U.S.S.G. § 2P1.1(a), which governs sentencing for escape offenses. Because we hold that Rosa-Ortiz's conduct was not a crime within the statute of conviction, however, we do not reach the sentencing issue.

indictment alleges a violation of a valid federal law." United States v. Saade, 652 F.2d 1126, 1134 (1st Cir. 1981). A federal court similarly lacks jurisdiction to enter a judgment of conviction when the indictment charges no offense under federal law whatsoever. See United States v. Peter, 310 F.3d 709, 713 (11th Cir. 2002) ("[A] district court is without jurisdiction to accept a guilty plea to a 'non-offense.'"); United States v. Andrade, 83 F.3d 729, 731 (5th Cir. 1996) (per curiam) (same).

Because jurisdictional challenges to an indictment may be raised at any time, Fed. R. Crim. P. 12(b)(3)(B), including for the first time on appeal, United States v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir. 2000), Rosa-Ortiz's guilty plea did not waive his right to argue that he has been imprisoned for conduct that Congress did not proscribe in the crime charged.[6]

## B. Interpretation of § 751(a)

This case presents a pure issue of statutory interpretation, which we review de novo. United States v. Molak, 276 F.3d 45, 49 (1st Cir. 2002).

As in any matter of statutory interpretation, the text of the statute is our starting point. Id. In relevant part, § 751(a) provides:

---

[6] Cf. Menna v. New York, 423 U.S. 61, 63 n.2 (1975) (per curiam) ("[A] plea of guilty to a charge does not waive a claim that -- judged on its face -- the charge is one which the State may not constitutionally prosecute.").

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned for not more than five years, or both . . . .

This circuit has never had occasion to consider the elements of an offense under § 751(a).

The broad preamble text, which purports to cover any person who escapes "from any custody under . . . any process issued . . . by any court," plainly would encompass Amparo-Concepción's escape from federal material witness detention. The preamble, however, has consistently been held <u>not</u> to define all of the elements of the offense, and we agree. Rather, because of the narrower sentencing terms of the statute,[7] the government must

---

[7] Notwithstanding its sweeping preamble, § 751(a) creates two categories of punishable offense, each defined by the legal basis for the escapee's federal custody:

> [The escapee] shall, [1] <u>if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense</u>, be fined under this title or imprisoned not more than five years, or both; or [2] <u>if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction</u>, be fined under this title or imprisoned not more than one year, or both.

§ 751(a) (emphasis added). Only the first is involved in this case. But because of the differing penalties, the indictment must

-7-

prove one of the enumerated bases for the escapee's federal custody.  See United States v. Richardson, 687 F.2d 952, 954-62 (7th Cir. 1982) (discussing § 751(a) and its history at length); see also United States v. Patterson, 230 F.3d 1168, 1172 n.2 (9th Cir. 2000); United States v. Evans, 159 F.3d 908, 910 (4th Cir. 1998); United States v. Vanover, 888 F.2d 1117, 1121 (6th Cir. 1989).

Accordingly, courts have distilled three essential elements of the offense of escape under § 751(a):

(1)    escape or attempted escape;
(2)    from the custody of the Attorney General or his appointed representative, or from a place where the defendant is confined at the direction of the Attorney General;
(3)    where the custody is by virtue of
       (i)    arrest on a charge of felony; or
       (ii)   conviction of any offense.[8]

See Evans, 159 F.3d at 910; Vanover, 888 F.2d at 1121; United States v. Edrington, 726 F.2d 1029, 1031 (5th Cir. 1984).  The government acknowledges these elements.  The dispute in this case involves only the third element.

---

state, and the government must prove, the basis for the escapee's federal custody.  United States v. Vanover, 888 F.2d 1117, 1121 (6th Cir. 1989); United States v. Richardson, 687 F.2d 952, 954-62 (7th Cir. 1982).

[8] These are the elements of a § 751(a) offense bearing a statutory maximum sentence of five years.  The elements of the lesser offense under § 751(a) are analogous, with the specified bases for federal custody, listed in the disjunctive, comprising the third element.

Whether and in what circumstances § 751(a) reaches escapes from material witness detention under 18 U.S.C. § 3144 appears to be a question of first impression in the courts of appeals. The United States concedes that Amparo-Concepción's arrest on a material witness warrant did not, by itself, constitute "an arrest on a charge of felony" or a "conviction of any offense." The government argues, however, that because Amparo-Concepción had already been convicted of a felony and incarcerated when he was transferred to federal custody, he was in federal custody "by virtue of conviction of any offense" and is therefore subject to prosecution under § 751(a).[9] The conviction in question, the government urges, need not be a federal conviction.

There are several flaws in the government's reasoning. First, even assuming the government is correct that a state conviction may satisfy the "conviction of any offense" clause of § 751(a) in appropriate circumstances,[10] the statute unequivocally requires that the escapee be in federal custody "by virtue of" that

---

[9] Section § 751 does not prohibit escapes by state prisoners from <u>state</u> custody. <u>United States</u> v. <u>Depew</u>, 977 F.2d 1412, 1413 (10th Cir. 1992) ("Section 751 was not intended by Congress to apply to persons who merely escape from state custody."); <u>United States</u> v. <u>Howard</u>, 654 F.2d 522, 525 (8th Cir. 1981) (similar).

[10] We do not decide this issue. <u>Compare</u> <u>Derengowski</u> v. <u>United States</u>, 404 F.2d 778, 781 (8th Cir. 1968) ("We cannot reasonably find that Congress intended 'any offense' to mean 'federal offense' only."), <u>with</u> <u>United States</u> v. <u>Edrington</u>, 726 F.2d 1029, 1031 (5th Cir. 1984) (indictment under § 751(a) must allege that the escapee was held "pursuant to conviction of an identified <u>federal</u> offense" (emphasis added)).

-9-

conviction. § 751(a); see Richardson, 687 F.2d at 966-67 (reversing escape conviction under § 751(a) for insufficient evidence that the defendant's custody was "by virtue of" a conviction of any offense). The statutory phrase "by virtue of," by its plain meaning, suggests a but-for causation test. See Webster's Third New Int'l Dictionary 307 (defining "by virtue of" to mean "by reason of" or "as a result of"); Black's Law Dictionary 201 (6th ed. 1990) ("By force of, by authority of, by reason of. Because of, through, or in pursuance of" (citations omitted)). Courts have applied the requirement in precisely this fashion. See, e.g., Patterson, 230 F.3d at 1171 (holding that supervised release constitutes custody "by virtue of" the original conviction because the defendant would not have been on supervised release "but for" the underlying conviction); Evans, 159 F.3d at 913 (similar); Derengowski v. United States, 404 F.2d 778, 781-82 (8th Cir. 1968) (federal custody was "by virtue of" defendant's arrest on federal criminal charges because "but for defendant's arrest . . . he would never have been in federal custody").

Amparo-Concepción was not in federal custody "by virtue of" his Puerto Rico felony conviction. The United States cannot and does not claim that but for Amparo-Concepción's conviction under Puerto Rico law, he would not have been detained as a material witness. The material witness statute does not require that the detained witness have an antecedent state conviction.

-10-

§ 3144. Further, the United States makes no argument that there is a logical nexus between Amparo-Concepción's bank fraud conviction in the Puerto Rico courts and the material witness warrant for his arrest -- indeed, the government conceded at oral argument that the two are unrelated. According to the uncontroverted facts recited by defense counsel at Rosa-Ortiz's sentencing, Amparo-Concepción voluntarily contacted federal authorities to offer information regarding the use of fraudulent immigration documents in, ironically, prison escape schemes. The federal government became interested in this information and ordered Amparo-Concepción detained to ensure that his testimony would remain available as the investigation proceeded. The fact that Amparo-Concepción was already in a Puerto Rico jail at the time did not logically or legally enable his federal arrest -- it merely made him easier to locate. The material witness warrant could just as easily have issued on the same application if Amparo-Concepción had been free on the streets of San Juan; indeed, there was <u>less</u> reason for the federal court to issue the warrant here because Amparo-Concepción was already detained by local authorities. Accordingly, Amparo-Concepción was not in federal custody "by virtue of" a conviction of any offense, and his attempted escape from that custody did not violate § 751(a).

This explains why the government's reliance on <u>Derengowski</u> is misplaced. In <u>Derengowski</u>, the defendant was

-11-

convicted of armed robbery in state court and imprisoned in a state facility. 404 F.2d at 779. Two years later, while still in state custody, he was indicted on federal charges and transferred to federal court for arraignment. The federal indictment was subsequently dismissed. While awaiting his return to state custody, the defendant attempted to escape. Id. In upholding his conviction under § 751, the Eighth Circuit emphasized that although the federal charges had been dismissed before the defendant tried to escape, the defendant was nevertheless in federal custody "'by virtue of an arrest on a charge of felony' within the provisions of § 751 (i.e., but for defendant's arrest on the federal felony charges he would never have been in federal custody)." Id. at 781-82. The same simply cannot be said of Amparo-Concepción: his Puerto Rico conviction was not a but-for cause of his federal detention.[11]

Moreover, the government's interpretation of § 751 would require us to conclude that Congress outlawed escapes from material

---

[11] The dissent would rely on Derengowski nonetheless, characterizing the Eighth Circuit's interpretation of the "by virtue of" language in § 751 as "dicta" and an "alternative holding." This objection does not address the merits of our interpretation of the "by virtue of" clause. Nor does the primary holding of Derengowski help the dissent. Derengowski held that the "conviction of any offense" language in § 751 may be satisfied by state convictions. See 404 F.2d at 781. We do not decide that question today. See supra note 10. Even assuming that Derengowski is correct, though, the federal custody must still be "by virtue of" the state conviction. Nothing in Derengowski obviates that statutory requirement.

-12-

witness detention by persons transferred from state prison, but not escapes from material witness detention by persons otherwise detained. Such a distinction would not be irrational; we simply do not find it in the language of the statute. Section 751(a) contains no reference to "transfers" between state and federal custody. As the government itself points out, the text of the statute draws no distinction between state and federal offenses or convictions. In short, there is no textual basis for the government's interpretation of § 751(a).

Absent a textual basis for the government's argument, concerns for lenity and due process compel us to reject it. See Dowling v. United States, 473 U.S. 207, 214 (1985) ("[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite."); see also Bryan v. United States, 524 U.S. 184, 205 (1998) (Scalia, J., dissenting) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."). We reject the government's argument and hold that § 751(a), by its terms, does not apply to persons held in federal custody solely by virtue of a material witness warrant.

The dissent would grant this conclusion but hold that Amparo-Concepción was actually in federal custody "by virtue of"

-13-

his Puerto Rico conviction. The dissent reaches this conclusion based on an argument never raised by the government: that but for his Puerto Rico conviction, Amparo-Concepción would have been "entitled" to release under 18 U.S.C. § 3142, the statute governing pretrial release of criminal defendants. See § 3144 (authorizing a judicial officer to "order the arrest of [a material witness] and treat the person in accordance with section 3142 of this title"). Implicit in this argument is the assumption that if Amparo-Concepción had been so released, he would no longer have been in federal custody within the meaning of § 751.

We will assume arguendo that § 3142 applies with full force to material witnesses. But cf. In re Application of United States for Material Witness Warrant, 213 F. Supp. 2d 287, 295 (S.D.N.Y. 2002) (noting aspects of § 3142 that are apparently inapplicable to material witnesses). Even so, the dissent's argument is flawed, for several reasons. First, the factual premise is wrong. Nothing in § 3142 would "entitle[]" Amparo-Concepción to release absent his Puerto Rico conviction. The Supreme Court has expressly rejected the notion that § 3142 offers a guarantee of release to any defendant. See United States v. Montalvo-Murillo, 495 U.S. 711, 720 (1990) ("Automatic release contravenes the object of the statute, to provide fair bail procedures while protecting the safety of the public and assuring the appearance at trial of defendants found likely to flee.").

-14-

Indeed, given that the FBI was interested in Amparo-Concepción because of his knowledge of escape schemes, the court could conceivably have ordered him detained without bail on the ground that he presented a risk of flight.  See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) (upholding denial of bail based on risk of flight); United States v. Nai, 949 F. Supp. 42, 45 (D.Mass. 1996) (material witness may be detained under § 3142 if government establishes risk of flight by preponderance of the evidence).  Nor is it true that the Puerto Rico conviction required the district court to order Amparo-Concepción held without bail.  Section 3142 incorporates no such bright-line rule.  In short, the dissent's conclusion that "[i]t was the Commonwealth's conviction that retained Amparo-Concepción in federal custody" is hardly a necessary one.

Second, the dissent is incorrect to assume that if Amparo-Concepción had been released under § 3142, he would no longer have been in federal custody for purposes of § 751.  See United States v. Vaughn, 446 F.2d 1317 (D.C. Cir. 1971) (defendant who fled while on pretrial release was validly convicted of escape); United States v. Keller, 912 F.2d 1058, 1059-61 (9th Cir. 1990) (escape violation occurred when defendant failed to report to correctional facility to begin his sentence); United States v. Coggins, 398 F.2d 668 (4th Cir. 1968) (affirming escape conviction of defendant who failed to return from furlough).

-15-

Also, even if it were true that Amparo-Concepción's Puerto Rico conviction ensured that he was denied bail, that does not change the legal basis for Amparo-Concepción's federal detention. Section 3142 only applies to defendants in federal custody on some legal basis. Amparo-Concepción was not in federal custody because he committed a state offense. He was in federal custody because, and only because, he was arrested as a material witness. That fact is dispositive of this appeal, because we hold that § 751 does not apply to persons in federal custody solely on the basis of § 3144.

This conclusion is not reached lightly, and we have carefully considered potential objections to our reading of § 751. At first blush, perhaps the strongest such objection arises from the Sentencing Guidelines. The guideline applicable to escape offenses, U.S.S.G. § 2P1.1(a), states that the base offense level for a violation of § 751(a) shall be

(1) 13, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense;

(2) 8, otherwise.

The "otherwise" clause could conceivably be read to suggest that the Sentencing Commission, and derivatively Congress, understood § 751 to apply to any and all forms of federal custody, including material witness detention. The original text of the guideline could be said to reinforce this inference: rather than simply say

"otherwise," the 1987 text of § 2P1.1(a)(2) explicitly mentioned escapes "from lawful custody awaiting extradition, <u>pursuant to designation as a recalcitrant witness</u> or as a result of a lawful arrest for a misdemeanor." U.S.S.G. § 2P.1.1(a)(2) (1987) (amended 1989) (emphasis added). As Rosa-Ortiz's counsel argued at sentencing, material witness detention is similar to recalcitrant witness detention.[12] The guideline anticipated punishment for the latter, so the question is whether that fact suggests the Sentencing Commission and Congress understood § 751 to reach the former.

The answer is no. The recalcitrant witness statute, 28 U.S.C. § 1826, deserved mention in the original version of § 2P1.1 not because § 751 punishes escape from recalcitrant witness detention, but because another statute does: § 1826 defines its own crime of escape. <u>See</u> § 1826(c) (escape from recalcitrant witness detention punishable by up to three years in prison); <u>see also</u> U.S.S.G. App. A (designating § 2P1.1 as the guideline applicable to convictions under 28 U.S.C. § 1826(c)). Section 1826(c) also proscribes escape from confinement pursuant to 18 U.S.C. § 4243, which authorizes involuntary hospitalization pursuant to a judgment

---

[12] A recalcitrant witness is a witness before any federal court or grand jury who refuses, without just cause shown, to comply with an order to testify or produce documents or other information. <u>See</u> 28 U.S.C. § 1826(a). A material witness, by contrast, is a person whose testimony is material to a criminal proceeding and whose presence at the proceeding cannot practicably be secured by subpoena. <u>See</u> 18 U.S.C. § 3144.

of not guilty by reason of insanity. This not only explains why the Sentencing Guidelines anticipate escape offenses from "other[]" species of federal detention,[13] but also underscores our conclusion regarding the relationship between § 751(a) and the material witness statute. Congress, it is evident, has corrected potential deficiencies in the scope of § 751(a) by enacting other statutes to prohibit escape from particular categories of federal custody. Yet none of these statutes addresses escape from material witness detention, and the material witness statute itself lacks an escape prohibition analogous to § 1826(c). See § 3144. This is not the first time that a gap has been identified in the sweep of § 751. See 134 Cong. Rec. S17360, S17370 (Nov. 10, 1988) (acknowledging, in amending § 751(a) to proscribe escape from detention pending deportation or extradition, that the original failure of the statute to prohibit such conduct was an "apparent oversight" and a "seemingly inadvertent omission").

We are certain that Congress did not intend that attempted escapes by material witnesses in federal custody should bear no consequences. The government stated at oral argument that the defendants' conduct may at least constitute obstruction of justice. See 18 U.S.C. § 1503(a). But that was not the crime charged here. For whatever reason, the government chose instead to

---

[13] Of course, the "otherwise" clause in U.S.S.G. § 2P1.1(a)(2) also governs sentencing in prosecutions under the misdemeanor escape provisions of § 751(a). See supra note 7.

-18-

charge a conspiracy to violate § 751(a).  The plain text of that statute does not support the indictment in this case, and "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." United States v. Lanier, 520 U.S. 259, 266 (1997).  Rosa-Ortiz's conviction cannot stand.

Before concluding, we will comment on one theme raised by the defense.  Rosa-Ortiz points out that the language of the indictment effectively obscured the existence of the legal issue we have just resolved.  The indictment charged that Rosa-Ortiz and others "conspired to obtain the unlawful release of MAXIMILIANO AMPARO-CONCEPCIÓN, who was lawfully confined at the direction of the Attorney General by virtue of a court order issued on December 7, 2000 by the United States District Court for the District of Puerto Rico . . . at which time [Amparo-Concepción] was serving a sentence for a felony conviction of the Commonwealth of Puerto Rico."  The indictment does not mention that the "court order" in question was a material witness warrant, and its phrasing arguably encourages the erroneous inference that Amparo-Concepción's federal detention was related to his Puerto Rico felony conviction.  If this was purposeful obfuscation to hide potential defects in the indictment, we would have significant concerns.  But we are not prepared to conclude, without more, that the government's

circumlocution was purposefully done to hide the issue. Though the § 751(a) issue was obscured on the face of the indictment, defense counsel informed the court both at the change of plea hearing and at sentencing that Amparo-Concepción was in federal custody only pursuant to a material witness warrant. Regrettably, the prosecutor did not disclose this fact to the court; she merely did not deny defense counsel's assertion. Still, during the trial stage of this case neither defense counsel nor the court noticed the issue we have just resolved, and the same may have been true of the government. Nonetheless, the form of the indictment was, at best, unfortunate: this appeal might never had occurred had the government paid closer attention to this issue from the outset.

## III.

For these reasons, we conclude that 18 U.S.C. § 751(a) does not prohibit attempted escapes from detention under 18 U.S.C. § 3144. Rosa-Ortiz's guilty plea must be **<u>vacated</u>** and the indictment must be **<u>dismissed</u>**. **<u>So ordered</u>**.

**Dissenting opinion follows.**

**SILER**, <u>Circuit Judge</u> **(dissenting).** I respectfully dissent. I would uphold the conviction of Rosa-Ortiz because he pleaded guilty to conspiracy to violate 18 U.S.C. § 751(a), which is a federal offense under the language of the indictment.

The co-defendant, Amparo-Concepción, was imprisoned by the Commonwealth of Puerto Rico for a felony offense. Thus, his confinement was "by virtue of [a] conviction of [an] offense," 18 U.S.C. § 751(a), even though it was not a federal offense. Certainly, he was in federal custody pursuant to a material witness warrant under 18 U.S.C. § 3144. However, if there had not been the underlying Commonwealth conviction and custody, Amparo-Concepción would have been entitled to possible release pursuant to 18 U.S.C. § 3142. It was the Commonwealth's conviction that retained Amparo-Concepción in federal custody.

I would follow the decision in <u>Derengowski</u> v. <u>United States</u>, 404 F.2d 778, 781 (8th Cir. 1968), that "any offense under § 751 includes state offenses." Like Derengowski, Amparo-Concepción's custody was "by virtue of his conviction of any offense." The majority opinion emphasizes the dicta or alternative holding in <u>Derengowski</u> that his custody was by virtue of an arrest on a charge of a felony. He was in federal custody pursuant to a writ of habeas corpus ad prosequendum to answer charges in federal court. However, before he escaped, the federal charges had been

-21-

dismissed.  Nevertheless, that alternative holding is dictum that need not govern our resolution of this issue.

I agree with the majority that the material witness warrant could just as easily have been issued on the same application if Amparo-Concepción had been free on the streets.  In that case, his escape could not have been prosecuted in violation of § 751, because there was no underlying offense.  Our situation is obviously different.  I would affirm the conviction below for these reasons stated.