[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15100
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00141-SCJ-RGV-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BANDELE ADEKUNLE ADENEYE,
a.k.a. Bandale I. Ade,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(September 24, 2014)

Before HULL, MARCUS, and FAY, Circuit Judges.

PER CURIAM:

Bandele Adekunle Adeneye appeals his total sentence of 13 months of imprisonment for his convictions of escape and failure to surrender to serve sentence.  We affirm in part, and vacate and remand in part.

## I. BACKGROUND

According to the Presentence Investigation Report ("PSI"), Adeneye pled guilty on November 4, 1994, to unlawfully possessing stolen mailbox keys.  On June 29, 1995, he was sentenced to 24 months of imprisonment.  Adeneye was not confined at that time, pursuant to an appearance bond.  The judge ordered him to report to prison on September 8, 1995, to begin serving his sentence.  Adeneye did not report to prison, however, and he moved without leaving a forwarding address.  A warrant subsequently was issued for his arrest.

In April 2011, an Atlanta-based attorney contacted the U.S. Marshal Service to inquire about arrangements for Adeneye to surrender voluntarily.  The attorney did not reveal Adeneye's location, but investigators eventually discovered Adeneye was using the name "Bandele I. Ade" and was residing in Reynoldsburg, Ohio.  On November 21, 2012, law enforcement arrested Adeneye in Reynoldsburg.

In April 2013, a federal grand jury charged Adeneye with escape, in violation of 18 U.S.C. § 751(a) ("Count 1"), and failure to surrender for service of sentence, in violation of 18 U.S.C. § 3146(a)(2), (b)(1)(A)(ii) ("Count 2").

2

Adeneye specifically was charged in Count 1 with "*escape from custody*, which custody by virtue of a process issued under the laws of the United States by the District Court for the Northern District of Georgia, upon and *by virtue of the conviction* and sentencing . . . for the offense of unlawfully possess[ing] stolen mailbox keys." ROA at 8 (emphasis added). Adeneye pled guilty to both counts without the benefit of a written plea agreement.

In calculating Adeneye's advisory Sentencing Guidelines range, the U.S. Probation Office determined Adeneye had a base offense level of 13, pursuant to U.S.S.G. § 2P1.1(a)(1), for Count 1. For Count 2, he had a base offense level of 11. The PSI did not group the counts under §§ 3D1.1 and 3D1.2. In accordance with the multiple count rules under § 3D1.4, Adeneye's combined adjusted offense level was 15. Adeneye received a two-level reduction under § 3E1.1(a) for acceptance of responsibility; his total offense level was 13. Adeneye had a criminal history category of III. Based on his total offense level of 13 and criminal history category of III, his Guidelines imprisonment range was 18 to 24 months.

Adeneye filed the following objections to the PSI. First, he argued he should not have received a base offense level of 13 under § 2P1.1 for Count 1, because he was not in custody or confinement when he failed to surrender. He further asserted failure to surrender to serve a sentence did not present the same risks of harm associated with escape from the custody of a police officer or a penal

3

institution.  He contended the specific offense characteristics of the Guideline, in § 2P1.1(b)(2) and (3), reflected that fact, because subsections (b)(2) and (b)(3) provided for reductions to a defendant's base offense level if he escaped from "non-secure custody."[1]  Because the Guidelines recognized that escapes from non-secure custody presented fewer risks, Adeneye argued the lower base offense level of 8 should apply when a defendant was not in custody and escaped by failing to surrender to serve a sentence.

Second, Adeneye argued his counts should have been grouped together under § 3D1.2(a), because his conduct involved one act, failure to surrender. Alternatively, he contended his counts should have been grouped together under § 3D1.2(b), because, even if escape and failure to surrender constituted two acts, they were connected by a common criminal objective or constituted part of a common scheme or plan.

Finally, Adeneye requested a downward variance from the PSI's calculated guideline range.  He urged the judge to consider and give adequate weight to mitigating evidence, including his youth at the time he fled, his subsequent rehabilitation, his educational pursuits and employment, his volunteer activities, and the impact a lengthy period of incarceration would have on his family and

---

[1] "Non-secure custody" is defined as "custody with no significant physical restraint (e.g., where a defendant walked away from a work detail outside the security perimeter of an institution; where a defendant failed to return to any institution from a pass or unescorted furlough; or where a defendant escaped from an institution with no physical perimeter barrier)." U.S.S.G. § 2P1.1, cmt. n.1.

4

community.  Adeneye specifically requested a sentence of six months of imprisonment, to run concurrently with the 24-month sentenced imposed in his prior possession-of-stolen-mailbox-keys case.

At the sentencing hearing, the district judge overruled Adeneye's objection regarding the base offense level for escape, finding 13 was the correct base offense level under § 2P1.1(a)(1).  The judge also overruled the objection concerning grouping.  Accordingly, the judge determined Adeneye had a total offense level of 13, a criminal history category of III, and a Guidelines imprisonment range of 18 to 24 months.  After hearing arguments in mitigation, the judge departed downward 4 levels, giving Adeneye a total offense level of 9.  A total offense level of 9 and a criminal history category of III resulted in a Guidelines range of 8 to 14 months.  The judge sentenced Adeneye to 13 months of imprisonment each on Counts 1 and 2, to run concurrently with each other but consecutively to the 24-month sentence imposed in his prior case for possession of stolen mailbox keys.

Adeneye objected to the judge's findings of fact and conclusions of law with regard to the above-mentioned objections.  He further objected to the judge's failure to make any findings as to whether he had been in custody for purposes of determining his base offense level under § 2P1.1.  He also objected to the judge's failure to make any factual findings regarding how his failure to surrender constituted more than one act for grouping purposes.

5

The judge responded and specifically found 13 was the appropriate base offense level for the escape conviction, because Adeneye had been in custody and had escaped from custody.  The judge further stated Adeneye's failure to surrender constituted two separate offenses with regards to the grouping objection.

The government subsequently requested the district judge to find that he would have imposed the same sentence, regardless of the Guidelines calculations.  The judge responded with the following statement:

> [L]et me make sure for the record so when you all appeal everybody will have it for the record.  The Court departed down four levels for two reasons:  One, the Court felt it was reasonable.  Two, the Court also felt that what defense counsel on behalf of her client asked for was appropriate and reasonable.  The Court did not think changing the criminal history category, though, from a three to a two would be reasonable and the Court did not do that.
>
> Now, you are right, the custody guideline range went from six to twelve months to eight to fourteen months, and I sentenced Mr. Adeneye to 13 months in the face of a custody guideline range of eight to fourteen months.  I wanted to make sure everybody has their record.

ROA at 232-33.

## II. DISCUSSION

A. <u>Base Offense Level for Escape under U.S.S.G. § 2P1.1</u>

On appeal, Adeneye argues the district judge applied the wrong base offense level as to Count 1.  He contends he should have received a base offense level of 8, rather than 13, because his custody was not by virtue of an arrest or conviction.

6

We review a district judge's application of the Sentencing Guidelines de novo and the judge's findings of fact for clear error. *United States v. Bane*, 720 F.3d 818, 824 (11th Cir.), *cert. denied*, 134 S. Ct. 835 (2013).

A defendant commits the federal crime of escape if he:

> [E]scapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or *from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge*, or from the custody of an officer or employee of the United States pursuant to lawful arrest . . . .

18 U.S.C. § 751(a) (emphasis added). "[C]ustody does not require direct physical restraint and may be minimal or constructive." *United States v. Gowdy*, 628 F.3d 1265, 1267 (11th Cir. 2010) (citation and internal quotation marks omitted) (recognizing convictions sentenced under § 2P1.1 often involve failures to report or return to prison). Furthermore, the custodial requirement is satisfied "where a lawful judgment of conviction has been issued by a court against the defendant." *Id.* at 1268.

The Guidelines provide the base offense level for escape is "13, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense; [or] 8, otherwise." U.S.S.G. § 2P1.1(a)(1), (2). We have not analyzed in a published opinion whether a base offense level of 13 or 8 applies to a defendant who escaped, in violation of 18 U.S.C. § 751(a), by failing

7

to surrender to serve his sentence.  Nevertheless, based on a plain reading of the Guideline, 13 is the appropriate base offense level in this case. Adeneye pled guilty to escape, and, specifically, pled guilty to "escape from custody, . . . upon and by virtue of the conviction and sentencing . . . for the offense of unlawfully possess[ing] stolen mailbox keys."  ROA at 8.  Thus, Adeneye pled guilty to escape from "custody or confinement . . . by virtue of an arrest on a charge of felony, or conviction of any offense," which warrants a base offense level of 13. U.S.S.G. § 2P1.1(a)(1).  Because he pled guilty, and because he does not challenge his plea, he cannot now argue his custody was not by virtue of an arrest or conviction.  *See McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166 (1969) ("[A] guilty plea is an admission of all the elements of a formal criminal charge."); *United States v. Bonilla*, 579 F.3d 1233, 1240 (11th Cir. 2009) (recognizing a guilty plea generally waives a defendant's right to non-jurisdictional challenges to a conviction).

In addition, neither the Guidelines nor any statutory or case law impose an explicit requirement that a defendant escape from physical custody in order to violate 18 U.S.C. § 751(a) or to receive a base offense level of 13 under U.S.S.G.

8

§ 2P1.1. *See* 18 U.S.C. § 751(a); U.S.S.G. § 2P1.1(a)(1); *Gowdy*, 628 F.3d at 1267

(recognizing custody does not require physical restraint and may be constructive).[2]

Accordingly, the district judge did not clearly err by finding Adeneye's base

offense level for his escape conviction was 13, and we affirm on this issue.

B. Grouping under U.S.S.G. § 3D1.2

Adeneye also argues on appeal the district judge misapplied the multiple

count rules by failing to group Counts 1 and 2 under U.S.S.G. § 3D1.2(a) or (b).

He contends that, had the judge sustained his objections and grouped the counts,

his total offense level would have been 9, rather than 13.  A total offense level of 9

and a criminal history category of III would have resulted in a guideline range of 8

to 14 months.  Adeneye argues the judge would have departed downward based on

mitigating evidence, which would have produced a guideline range below the

13-month total sentence imposed by the judge.

We view the district judge's refusal to group multiple counts under U.S.S.G.

§ 3D1.2 with due deference.  *United States v. Bradford*, 277 F.3d 1311, 1316 (11th

Cir. 2002) (per curiam).  "To facilitate judicial review of sentencing decisions and

avoid unnecessary remands, sentencing judges should make explicit findings of

---

[2] Adeneye also contends the specific offense characteristics of § 2P1.1 somehow support a finding that his base offense level is eight.  This argument lacks merit.  Although the specific offense characteristics in § 2P1.1 provide for reductions to the base offense level when a defendant escapes from "non-secure custody" and meets other requirements, they also recognize that a defendant's initial base offense level may be 13 under such circumstances.  U.S.S.G. § 2P1.1(b)(2)-(3).  Adeneye does not argue on appeal he should have received a downward adjustment based on escape from "non-secure custody," and thus, we need address that issue.

9

fact and conclusions of law." *United States v. Mock*, 523 F.3d 1299, 1304 (11th Cir. 2008) (citation, internal quotation marks, and alteration omitted) (remanding when a district judge did not make explicit findings and had applied a cross-reference in the arson guideline to the attempted first-degree murder guideline).

The Guidelines require that when a defendant has been convicted of more than one count, the sentencing judge must initially: "Group the counts resulting in conviction into distinct Groups of Closely Related Counts ('Groups') by applying the rules specified in § 3D1.2." U.S.S.G. § 3D1.1(a)(1). Section 3D1.2 provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> (a) When counts involve the same victim and the same act or transaction.
>
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

*Id.* § 3D1.2(a), (b).

Under subsection (a), counts should be grouped together "when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim." *Id.* § 3D1.2, cmt. n.3. Under subsection (b), "counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at

10

different times." *Id.* § 3D1.2, cmt. n.4. For offenses in which no identifiable victim exists, "the 'victim' for purposes of subsections (a) and (b) is the societal interest that is harmed." *Id.* § 3D1.2, cmt. n.2.

No binding precedent establishes whether convictions for escape, in violation of 18 U.S.C. § 751(a), and failure to surrender to serve sentence, in violation of 18 U.S.C. § 3146(a)(2) and (b)(1)(A)(ii), should be grouped under U.S.S.G. § 3D1.2(a) or (b), when both convictions arise from the defendant's failure to report to prison to begin serving a sentence.

The district judge made very limited findings on this issue, determining only that escape and failure to surrender involved two separate offenses. The judge did not address whether Adeneye's conduct concerned substantially the same harm to the same victim. Furthermore, the judge did not analyze whether Adeneye's acts were connected by a common criminal objective or constituted part of a common scheme or plan. *Id.* § 3D1.2(b) & cmt. n.4. Without this information, we cannot engage in meaningful appellate review. *Mock*, 523 F.3d at 1304 (holding the district judge's failure to make specific findings of law and fact precluded our review). We vacate and remand for the district judge to make additional findings

on whether Adeneye's convictions should have been grouped for sentencing purposes under U.S.S.G. § 3D1.2(a) and (b).[3]

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

---

[3] Even if the district judge erred in calculating the Guidelines range, the government contends remand is unnecessary, because the judge would have sentenced Adeneye in the same way without the errors.  The judge did not state explicitly he would have imposed the same sentence, however, and the judge noted he was imposing the 13-month total sentence in the face of the Guidelines calculations.  Accordingly, we do not conclude the judge's error, if any, was harmless. *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006) (holding we need not decide Guidelines issues or remand for new sentencing proceedings when a judge expressly states he would have imposed the same sentence, and such a sentence is reasonable); *United States v. Barner*, 572 F.3d 1239, 1248 (11th Cir. 2009) (recognizing, where a district judge indicates "the sentence was 'pursuant to the guidelines,' and the factors outlined in 18 U.S.C. § 3553," there is no harmless error).